THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOHNNIE CRITES                                                                                       PLAINTIFF

v.                                          Case No. 4:19-cv-00098-KGB

AETNA LIFE INSURANCE COMPANY                                                         DEFENDANT

**OPINION AND ORDER**

Plaintiff Johnnie Crites brings this action against defendant Aetna Life Insurance Company ("Aetna") to recover long-term disability benefits allegedly owed to her under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Dkt. No. 2). Before the Court is Aetna's motion for judgment on the administrative record (Dkt. No. 13). Ms. Crites filed a response in opposition to Aetna's motion for judgment on the administrative record (Dkt. No. 16), to which Aetna replied (Dkt. No. 20). For the reasons set forth herein, the Court grants Aetna's motion for judgment on the administrative record.

I.   **Factual And Procedural History**

Ms. Crites was employed by Correct Care Solutions, LLC ("Correct Care"), as a Licensed Practical Nurse ("LPN"), a medium physical demand level position, from January 1, 2014, to April 5, 2015 (A.R. 156).[1] While employed by Correct Care, Ms. Crites participated in the "Group Life and Accident and Health Insurance Policy" ("the Plan"), administered by Aetna (A.R. 49). The Plan was issued with an effective date of January 1, 2015 (*Id.*).

---

[1] The administrative record, which was filed under seal, is bates-numbered "Aetna/Crites 0001–1573" (Dkt. No. 12). For the sake of brevity, the Court will abbreviate the Aetna/Crites Administrative Record as "A.R."

Among other things, the Plan provides for monthly long-term disability benefits to be paid when an insured is disabled and unable to work because of an illness, an injury, or a disabling pregnancy-related condition (A.R. 83). The Plan sets out the following "test of disability" for the receipt of long-term disability benefits:

> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
>
> - You cannot perform the **material duties** of your **own occupation** solely because of an **illness, injury** or disabling pregnancy-related condition; and
> - Your earnings are 80% or less of your **adjusted predisability earnings.**
>
> *After the first 24 months of your disability* that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness, injury** or disabling pregnancy-related condition.

(A.R. 84). The Plan defines "reasonable occupation" as "any gainful activity: for which you are, or may reasonable become, fitted by education, training, or experience; and which results in, or can be expected to result in, an income of more than 80% of your **adjusted predisability earnings.**" (A.R. 101).

The Plan also excludes pre-existing conditions from long-term disability coverage (A.R. 86). A "pre-existing condition" is defined as "an **illness, injury** or pregnancy-related condition for which, during the 3 months before your coverage or increase in coverage became effective: you were diagnosed or treated; or you received diagnostic or treatment services; or you took drugs that were prescribed or recommended by a **physician.**" (*Id.*). The Plan "does not pay benefits for a disability that is caused, or contributed to, by a pre-existing condition, if the disability starts within the first 12 months after your coverage goes into effect." (*Id.*).

Ms. Crites ceased working as an LPN for Correct Care on April 5, 2015, due to hemiplegic migraines and a history of stroke resulting in left-sided weakness, blurry vision, and impaired memory (A.R. 156).

On October 12, 2015, Ms. Crites met for an initial evaluation with Donald Brady, M.D., a neurologist (A.R. 1468–70). Ms. Crites complained of left-sided headaches, left-sided numbness and tingling, and a history of stroke (A.R. 1468). Dr. Brady detailed Ms. Crites' past medical history, including a stroke in 2014 and migraines, headaches, and left-sided numbness and tingling since 2014, diagnosed her with classic migraine, intractable, and hemiplegic migraine, and prescribed her Topamax and Plavix, which she had been taking since 2014 (A.R. 1470).

Aetna conducted a pre-existing condition investigation and, on October 27, 2015, determined that her hemiplegic migraines and left-sided muscle weakness were the result of a pre-exiting condition and excluded her from long-term disability benefits under the Plan (A.R. 175, 634–36). Thereafter, Ms. Crites submitted additional medical records, including office visit notes from Dr. Brady for her follow-up visit on November 9, 2015, reflecting that she complained of left-lower extremity numbness (A.R. 1478–80), and a magnetic resonance imaging ("MRI") scan of her lumbar spine, which showed: (1) multilevel degenerative disc changes greatest from L3-L4 to L5-S1; (2) bulging disc and disc protrusion results in neural foraminal narrowing at L3-L4 through L5-S1 on the left, greatest at L5-S1; and (3) increased signal in the posterior annulus of L4-L5 and L5-S1, as can be associated with posterior annular tears (A.R. 1431–32). Aetna reviewed these additional documents, but it concluded that they were insufficient to warrant a reversal of its initial eligibility determination, reasoning that Ms. Crites' left-sided weakness was related to her pre-existing condition of hemiplegic migraine (A.R. 646–50).

Aetna subsequently received a letter from Dr. Brady, dated January 18, 2016, which noted that "Ms. Crites suffers from headaches most consistent clinically with the diagnosis of classic migraine with a previous episode of complicated migraine." (A.R. 1418). Dr. Brady explained that Ms. Crites' left-sided weakness was not related to her headaches and was suggestive of pseudoclaudication, a common symptom of lumbar spinal stenosis, causing impingement or inflammation of the nerves emanating from the spinal cord (*Id.*). Aetna then conducted a clinical assessment, which confirmed that Ms. Crites' left-sided weakness was secondary to pseudoclaudication and, by letter dated January 29, 2016, approved Ms. Crites' claim for long-term disability benefits under the "own occupation" definition of disability, effective retroactively as of October 2, 2015 (A.R. 237, 239, 563, 651–52, 659).

Following this initial approval, Dr. Brady submitted an Attending Physician Statement for Ms. Crites on December 1, 2015, which indicated that she was capable of working eight hours per day, five days per week (A.R. 1474–75). Aetna then referred Ms. Crites' file to a vocational rehabilitation consultant, and a Transferable Skills Analysis was conducted on March 14, 2016, which revealed 26 occupations, varying from "closest" to "good" match, that existed in Ms. Crites' labor market as "goals for job placement." (A.R. 560, 1396–98). Additionally, a job search was conducted, which indicated that two sedentary physical demand level positions were available in Ms. Crites' local labor market and that one of them offered a salary of $22,919–$37,954 per year (A.R. 1396–98). Although information about the two openings was circulated to Ms. Crites, she did not apply for either position or conduct her own job search, citing medical concerns (A.R. 559).

Ms. Crites had an initial consultation with Donald Blagdon, M.D., on June 1, 2016, at which Ms. Crites' multi-level degenerative disc disease was documented and a neurosurgery

4

referral was recommended (A.R. 1356).  Dr. Blagdon reviewed Ms. Crites' systems and stated that she was positive for back pain, arthralgias, neck pain, neck stiffness, numbness, and headaches, but negative for joint swelling, gait problems, dizziness, tremors, seizures, syncope, facial asymmetry, and weakness (*Id.*).  Dr. Blagdon then performed a physical examination of Ms. Crites; observed a normal range of motion in her musculoskeletal system and normal reflexes; and indicated that Ms. Crites was alert and oriented to person, place, and time (A.R. 1356–57).  Ms. Crites tested positive for tetrahydrocannabinol ("THC") (A.R. 1356).

Dr. Blagdon completed a Capabilities and Limitations Worksheet for Ms. Crites on July 14, 2016, opining that Ms. Crites could only occasionally (.5–2.5 hours per day) perform each of 20 actions; that she could continuously (5.1–8 hours) lift up to 20 pounds, frequently (2.6–5 hours) lift up to 35 pounds, occasionally lift up to 50 pounds, and never lift more than 50 pounds, and that she was capable of working 8 hours per day (A.R. 1384–85).

Ms. Crites returned to Dr. Blagdon for a follow-up visit on August 9, 2016, and complained of "worsening of her chronic neck pain over the past few days" and "chronic headaches controlled with Topamax."  (A.R. 1347).  Ms. Crites also indicated that she had an appointment with a neurosurgeon in a few weeks (*Id.*).  Dr. Blagdon found that Ms. Crites was alert and oriented to person, place, and time (A.R. 1349).  Dr. Blagdon also found that Ms. Crites had decreased range of motion in her neck due to pain and stiffness, that her left-hand grip was slightly weaker than her right-hand grip, that her coordination and gait were normal, and that there was no joint deformity or swelling in her musculoskeletal system (*Id.*).

Ms. Crites returned to Dr. Blagdon for another follow-up visit on October 31, 2016 (A.R. 1314–25).  Ms. Crites reported subject complaints of fatigue, unexpected weight change, arthralgias, and back and neck pain, but Dr. Blagdon's physical examinations were normal (A.R.

1320–21). Ms. Crites returned to Dr. Blagdon for a third follow-up visit on January 20, 2018 (A.R. 1302–13). At that visit, it was noted that Ms. Crites' blood pressure was "very hypersensitive" and that, during a recent hospitalization, she reported seizure-like activity that was "clearly psychogenic" and "obviously" due to a conversion disorder (A.R. 1308). Upon examination, Dr. Blagdon observed that Ms. Crites had normal range of motion and reflexes with no tenderness or deformity and that she was oriented to person, place, and time (A.R. 1309). Dr. Blagdon prescribed Ms. Crites hydrocodone to address her self-reported pain complaints (A.R. 1309). Ms. Crites returned to Dr. Blagdon on February 21 and April 20, 2017 (A.R. 1276–1301). Similar to past visits, Dr. Blagdon's physical examinations were normal (A.R. 1283, 1295).

On September 19, 2017, an Internal Clinical Assessment was conducted by Julie Ballas. Ms. Balls reviewed Ms. Crites' medical records and, consistent with Dr. Blagdon's July 14, 2016, Capabilities and Limitations Worksheet, concluded that she could constantly lift up to 20 pounds, frequently lift up to 35 pounds, and occasionally lift up to 50 pounds, and that she could work 8 hours per day (A.R. 357–59). Aetna also referred Ms. Crites' file to a vocational case manager, and a Transferable Skills and Labor Market Analysis was generated on September 28, 2017, which identified three sedentary-level occupations for which Ms. Crites possessed the transferable skills to perform: (1) call-out operator, (2) reservation clerk, and (3) personnel scheduler (A.R. 1264–70).

Aetna notified Ms. Crites, by letter dated October 2, 2017, that it was terminating her claim for long-term disability benefits under the "any reasonable occupation" standard of disability, reasoning that Ms. Crites was capable of performing full-time sedentary work (A.R. 755–58).

Ms. Crites returned to Dr. Blagdon for another follow-up visit on September 27, 2017 (A.R. 1225–42). Dr. Blagdon's review of systems and physical examinations were normal (A.R. 1232–

33). Ms. Crites was diagnosed with degenerative disc disease, chronic back pain, and cervical myelopathy with cervical radiculopathy, and Dr. Blagdon prescribed hydrocodone to manage her chronic pain and diazepam for her cervical myelopathy with cervical radiculopathy (A.R. 1234–35). On September 29, 2017, Dr. Blagdon completed an Attending Provider Statement, which listed diagnoses of cervical and lumbar degrative disc disease, with symptoms of chronic neck and back pain, as well as prior cerebrovascular accident (A.R. 1253). Despite these diagnoses and symptoms, Dr. Blagdon opined that Ms. Crites could do "most anything now." (*Id.*).

Dr. Blagdon completed a second Capabilities and Limitations Worksheet for Ms. Crites on September 29, 2017, indicating that she could continuously sit, frequently stand or walk, and occasionally lift or carry (A.R. 1248). Dr. Blagdon also opined that Ms. Crites could continuously lift up to 20 pounds, frequently life up to 35 pounds, occasionally lift up to 50 pounds, and never lift more than 50 pounds, that these restrictions were permanent, and that she could work up to 4 hours per day (*Id.*).

Dr. Blagdon completed a third Capabilities and Limitations Worksheet for Ms. Crites on October 30, 2017, noting that Ms. Crites could continuously sit, occasionally stand or walk, and frequently lift up to 10 pounds, but limiting her to only 2 hours of work per day (A.R. 1221).

Ms. Crites returned to Dr. Blagdon for another follow-up visit on November 9, 2017 (A.R. 1198–1216). Dr. Blagdon noted Ms. Crites' normal physical examinations, and an MRI scan revealed multilevel degenerative changes of the cervical spine with several levels of spinal stenosis and several levels of neural foraminal stenosis and no signal abnormality within the cervical cord (A.R. 1207).

Aetna contacted Dr. Blagdon on November 16, 2017 (A.R. 534). During the call, Dr. Blagdon explained that Ms. Crites might have a herniated disc, but that she was "up and around"

and could perform a full-time sedentary occupation (A.R. 410–11, 534).  Thereafter, Dr. Blagdon completed a fourth Capabilities and Limitations Worksheet for Ms. Crites, noting restrictions similar to those in his third Capabilities and Limitations Worksheet but not indicating how many hours per day Ms. Crites could work (A.R. 1195).

Ms. Crites had an initial consultation with Scott Schlesinger, M.D., a board-certified neurologist, on October 31, 2017 (A.R. 1187–93).  Ms. Crites presented with complaints of neck pain, headaches, and lower back pain, and Dr. Schlesinger diagnosed Ms. Crites with cervicalgia; other cervical disc degeneration, unspecified cervical region; low back pain; and intervertebral disc degeneration, lumbar region (A.R. 1178, 1184).  Ms. Crites' physical examinations yielded generally normal findings, except for reduced cervical range of motion (A.R. 1180–83).  X-rays of the cervical and lumbar spine revealed:  (1) moderately severe degenerative disc disease changes in the lumbar spine with no change on dynamic testing; (2) calcified C3 osteophyte, central and anterior to C3 elongated at C4; (3) slight cervical kyphosis at C3-4; and (4) severe degenerative disc disease changes in the cervical spine with no change on dynamic testing (A.R. 1184).

Aetna reviewed these additional medical records as they were submitted, but found them insufficient to reinstate Ms. Crites' long-term disability benefits (A.R. 785–86, 790).

Ms. Crites appealed the termination of her long-term disability benefits and submitted additional medical records in support of her disability claim, the majority of which pre-dated Aetna's "any reasonable occupation" determination (A.R. 994–1112, 1114–21).  Notably, Ms. Crites submitted medical records from Saline Memorial Hospital in Benton, Arkansas, dated January 13, 2018 (A.R. 1097–104).  On that day, Ms. Crites was hospitalized due to a transient ischemic attack (*i.e.*, a "warning stroke"), and a computed tomography ("CT") scan revealed left

periventricular white matter changes, consistent with remote lacunar infarct, with no evidence of acute intracranial abnormality (A.R. 1104).

Ms. Crites also submitted medical records from an initial consultation with Derrick Lewis, M.D., on February 22, 2018 (A.R 1106–12). Dr. Lewis documented Ms. Crites' past medical history and recorded Ms. Crites' subjective complaints of dizziness, high blood pressure, back problems, leg cramps, muscle aches, pain in shoulders and joints, difficulty balancing and speaking, headaches, loss of strength, and a stroke (A.R. 1106–07). Upon examination, Ms. Crites' neck, back, and extremities were noted as normal (A.R. 1107). Ms. Crites' neurological examination was also normal (*Id.*). Dr. Lewis diagnosed Ms. Crites with depression; anxiety; hypertension; cerebral aneurysm, nonruptured; intractable hemiplegic migraine without status migrainosus; and hot flashes (*Id.*).

That same day, Dr. Lewis completed a Capabilities and Limitations Worksheet for Ms. Crites, indicating that she could frequently sit, stand, or walk, occasionally push, pull, or reach, and frequently lift up to 10 pounds, occasionally lift up to 35 pounds, and never lift more than 35 pounds (A.R. 1105). Dr. Lewis advised that Ms. Crites refrain from working pending a neurological evaluation for her hemiplegic migraines (*Id.*).

Aetna referred Ms. Crites' appeal to Mostafa Farache, M.D., a board-certified neurologist (A.R. 962–75). Dr. Farache found in Ms. Crites' medical records an apparent conflict between the objectively normal medical tests, which "show[ed] a lot of functionality," and Ms. Crites' subjective complaints of pain, which lead Dr. Farache to postulate that Ms. Crites' self-reported symptoms and complaints were likely "manipulative behaviors." (A.R. 973). Dr. Farache explained that "[t]he majority of the claimant's examinations were noted to be normal" and that "[m]ost of the claimant's episodes of weakness were likely psychogenic versus factitious." (A.R.

974). Dr. Farache further explained that that "[t]he objective findings are obtained from the MRI of the cervical and thoracic spine which showed spondylosis/degenerative changes" and that "this was the only medical issue that was supported." (*Id.*). Dr. Farache then concluded that Ms. Crites, because of her spondylosis of the cervical and lumbar spine, could sit or engage in fine finger and hand movements without restriction, stand or walk for 4 hours in an 8-hour period, occasionally lift or carry up to 50 pounds and push or pull up to 75 pounds, frequently use stairs, climb, or reach at all levels, and occasionally bend, stoop, or crawl (A.R. 974–75).

Relying on Dr. Farache's independent neurological review and the 2017 Transferable Skills and Labor Market Analysis, Aetna upheld its denial of Ms. Crites' claim for long-term disability benefits under the "any reasonable occupation" definition of disability (A.R. 854–57). Specifically, Aetna found that, while some restrictions were supported by objective medical evidence, Ms. Crites was capable of performing full-time sedentary work (*Id.*).

Thereafter, Dr. Lewis submitted a second Capabilities and Limitations Worksheet, dated July 12, 2018, as well as evaluation notes from the same day (A.R. 893–99). Deviating from his prior restrictions, Dr. Lewis noted that Ms. Crites could only occasionally sit, stand, or walk, never carry, bend, or twist, and never lift more than 10 pounds (A.R. 899). Dr. Lewis believed that Ms. Crites was not capable of working any hours per day, writing "N/A" next to the total number of hours that the patient was capable of working per day (*Id.*). Dr. Lewis' physical examinations were normal (A.R. 897).

Aetna sent these additional medical records to Dr. Farache and requested an addendum to his neurological report (A.R. 511). Dr. Farache reviewed Dr. Lewis' records and determined that the additional information did not change his previous medical opinion because Dr. Lewis

documented that Ms. Crites "had a normal neurological examination with intact motor and sensory function." (A.R. 891).

## II. Standard Of Review

The Supreme Court has ruled that a denial of benefits challenged under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "An administrator's decision is reviewed for an abuse of discretion where the plan in question gives the administrator 'discretionary authority to determine eligibility for benefits.'" *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1031 (8th Cir. 2007) (quoting *Bruch*, 489 U.S. at 115). The Eighth Circuit has explained that "this deferential standard is not applicable, however, if the claimant demonstrates that 'a serious procedural irregularity existed' and caused a 'serious breach' of the plan administrator's fiduciary duty to the claimant." *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006) (quoting *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996)). Here, the parties agree that, under the Plan, Aetna has discretionary authority to determine eligibility. Thus, the abuse-of-discretion standard is appropriate.

It is well-established that, under the abuse-of-discretion standard, the plan administrator's decision will be reversed only if it was "arbitrary and capricious." *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896 (8th Cir. 2009) (quoting *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006)). To determine whether a plan administrator's decision was arbitrary and capricious, a court asks whether the decision to deny benefits "was reasonable" and "supported by substantial evidence." *Pralutsky*, 435 F.3d at 838 (quoting *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005)). Substantial evidence is "more than a

scintilla but less than a preponderance." *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 989 (8th Cir. 2014) (quoting *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004)). Stated differently, a court "must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Rutledge v. Liberty Life Assur. Co. of Bos.*, 481 F.3d 655, 659 (8th Cir. 2007) (quoting *Groves*, 438 F.3d at 875 (8th Cir. 2006)).

### III. Ms. Crites' Arguments

Ms. Crites argues that she did not receive a full and fair hearing, as required by 29 U.S.C. § 1133, because Aetna, "using retained expert/reviewers who have never seen or treated plaintiff[,] denied her future benefits by picking through the medical records for instances which support their opinions while completely ignoring the totality of her treatment records," which demonstrates that "there was a significant physical basis for her statements and those of her treating physicians that she was unable to work." (Dkt. No. 16, at 2). Ms. Crites explains that "[t]he 'selected' findings of the consultants were never reviewed by her treating physician and her doctors (who have been long term treaters) were not given ample opportunity to respond to the 'peer review' relied upon by Aetna to deny her claim." (*Id.*, at 3). While acknowledging that "a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians," Ms. Crites maintains that "the record in this case does not support the denial of benefits in this case." (*Id.*).

Next, Ms. Crites faults Aetna for not allowing her to review and rebut Dr. Farache's neurological report or the vocational case manager's assessment of her employability prior to its

final decision on administrative appeal. Specifically, Ms. Crites asserts that, "not only did the Aetna finding not reflect what plaintiff believed the medical records showed[,] but that Aetna did not provided [sic] the information about their [sic] basis of denial until the administrative record was closed." (*Id.*, at 4). Ms. Crites also accuses Aetna of hiring consultants who "called into question her credibility . . . by accusing her in their reports of fraud and illicit drug use without allowing her to submit records and other proof that demonstrated otherwise." (*Id.*, at 4–5 (citation omitted)). Ms. Crites further complains that she "was never told that a vocational expert had been retained and had reported that she could work at some sedentary jobs." (*Id.*). Finally, Ms. Crites asserts that the "arbitrary and capricious nature" of the administrator's actions is demonstrated by its "failure to allow her the knowledge that her physicians had not 'called back' and such failure was being used against her in her claim." (*Id.*, at 5 (citation omitted)). From this, Ms. Crites concludes that she did not receive a full and fair hearing, as required by § 1133.

### IV. Analysis

Ms. Crites argues that Aetna acted arbitrarily or capriciously in relying on Dr. Farache's independent neurological review and the 2017 Transferable Skills and Labor Market Analysis, as opposed to the opinions of her treating physicians. The Court disagrees.

The Supreme Court has explained that:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But . . . courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Thus, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support

denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *see also Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.")

Ms. Crites acknowledges as much. Still, Ms. Crites challenges Aetna's reliance on Dr. Farache's neurological report, accusing Dr. Farache of cherry-picking facts that support a denial of benefits while ignoring evidence from her treating physicians that supports a disability finding. This argument is conclusory. Ms. Crites does not specifically identify which opinions of her treating physicians Dr. Farache allegedly failed to credit properly, or which portions of the medical evidence of record do not support Dr. Farache's opinions. Instead, she merely alleges that her treatment records document that she suffers from "serious spinal issues" and "severe headaches," as well as "pain and limitations that have continued and worsened during the two years that plaintiff was receiving benefits under this policy." (Dkt. No. 16, at 3).

Nonetheless, the Court has carefully reviewed Dr. Farache's report and the medical evidence of record and is satisfied that Dr. Farache's opinions are supported by sufficient objective medical evidence. In his report, Dr. Farache reviewed and discussed Ms. Crites' entire claim file, including the findings and opinions of her treating physicians, and thoroughly explained the rationale for his conclusion that she is capable of performing at least sedentary work (A.R. 963–975). Contrary to Ms. Crites' contention, Dr. Farache's summary of the medical evidence of record specifically addressed the limitations discussed by her treating physicians, particularly regarding her left-sided weakness and spondylosis of the cervical and lumbar spine. Dr. Farache found a conflict between the objectively normal medical tests, which "show[ed] a lot of functionality," and Ms. Crites' subjective complaints of pain, and postulated that Ms. Crites' self-

reported symptoms and complaints were likely "manipulative behaviors." (A.R. 973). Dr. Farache documented five separate attempts to confer with Ms. Crites' treating physicians and sent a copy of his report to Drs. Lewis and Schlesinger, but he received no response (A.R. 821, 836, 972–73).

The Eighth Circuit has admonished district courts not to substitute their own weighing of the evidence for that of the plan administrator. *See Farley v. Ark. Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998). So long as the decision "is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997). For the reason explained above, Aetna's decision is not "overwhelmed by contrary evidence," and Ms. Crites' subjective medical opinions do not require a conclusion that Aetna's denial of benefits was unreasonable. *Coker v. Metro. Life. Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 901 (8th Cir. 1996)). Accordingly, the Court finds that Aetna's reliance on Dr. Farache's opinions, as well as the vocational case manager's 2017 Transferable Skills and Labor Market Analysis, was not arbitrary or capricious. *See Hare v. Hartford Life & Acc. Ins. Co.*, No. 4:09-CV-883-DPM, 2010 WL 4269238, at *3 (E.D. Ark. Oct. 27, 2010) (determining that the plan administrator did not abuse its discretion when it relied on independent medical-records reviews by two experienced doctors and a vocational rehabilitation report in denying the plaintiff's claim for long-term disability benefits under an ERISA plan).

Ms. Crites also argues that she did not receive a full and fair hearing because Aetna did not allow her to review and rebut its consultants' reports prior to its final decision on administrative appeal. Again, the Court disagrees.

Section 503 of ERISA requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied,

setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The ERISA Claims Regulation, 29 C.F.R. § 2560.503-1, implements this provision, "setting forth detailed procedural requirements that apply when a plan sponsor or administrator denies a claim for health care benefits." *Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1037 (8th Cir. 2016).

The Eighth Circuit has explained that "[f]ull and fair review includes the right to review all documents, records, and other information relevant to the claimant's claim for benefits, and the right to an appeal that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." *Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005). Specifically, § 2560.503-1(h) mandates that:

> Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

29 C.F.R. § 2560.503-1(h)(i). The regulation further provides that "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures," among other things, "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). A document is "relevant" if it "[w]as relied upon in making the benefit determination" or "[w]as submitted, considered, or generated in the course of making the benefit determination." 29 C.F.R. §§ 2560.503-1(m)(8)(i), (ii).

Importantly, the Eighth Circuit has determined that only the initial denial is an "adverse benefit determination," as used in § 2560.503-1(h), and that a decision on appeal is not. *See Price v. Xerox Corp.*, 445 F.3d 1054, 1056 (8th Cir. 2006). Consequently, upon Aetna's initial denial of Ms. Crites' claim for long-term disability benefits under the Plan, she was entitled, upon request, to copies of all documents relevant to her claim for benefits.

The ERISA Claims Regulation also provides that, "[i]n the case of an adverse benefit determination on review, the plan administrator shall provide such access to, and copies of, documents, records, and other information described in paragraphs (j)(3), (j)(4), and (j)(5) of this section as is appropriate." 29 C.F.R. § 2560.503-1(i)(5).

Here, the record establishes that Aetna sent Ms. Crites a copy of its claim file on October 10, 2017, approximately one week after its letter terminating her long-term disability benefits under the "any reasonable occupation" definition of disability (A.R. 434–35, 450). The record further demonstrates that Aetna sent Ms. Crites a copy of the administrative record, including Dr. Farache's neurologist's report, around two-and-a-half weeks after its letter rejecting Ms. Crites' appeal (A.R. 490, 492, 496).[2]

---

[2] Ms. Crites asserts that she "was never told that a vocational expert had been retained and had reported that she could work at some sedentary jobs." (Dkt. No. 16, at 4). It is unclear to which vocational report Ms. Crites is referring. In its October 2, 2017, letter terminating Ms. Crites' claim for long-term disability benefits under the "any reasonable occupation" standard of disability, Aetna relied on, among other things, Ms. Ballas' September 19, 2017, Internal Clinical Assessment and the September 28, 2017, Transferable Skills and Labor Market Analysis (A.R. 756). There is record evidence that Aetna sent Ms. Crites a copy of her entire claim file on October 10, 2017 (A.R. 434–35, 450). In its June 7, 2018, letter upholding its denial of Ms. Crites' claim for long-term disability benefits under the "any reasonable occupation" definition of disability, Aetna reviewed the vocational assessment that was conducted on September 28, 2017, but did not discuss any other vocational reviews. Accordingly, the Court cannot say, on the record before it, that Aetna withheld portions of Ms. Crites' claim file.

Essentially, then, Ms. Crites argues that Aetna violated § 2560.503-1(h)(2)(iii) by failing to allow her to review and rebut Dr. Farache's report, which was obtained after its initial denial of Ms. Crites' claim and during the administrative appeals process, prior to its final decision on administrative appeal.  The Eighth Circuit has already rejected such an approach, holding that "the full and fair review to which a claimant is entitled under 29 U.S.C. § 1133(2) does not include reviewing and rebutting, prior to a determination on appeal, the opinions of peer reviewers solicited on that same level of appeal."  *Midgett*, 561 F.3d at 896; *see also Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166 (10th Cir. 2007) (holding that "subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal").

In adopting the definition of "relevant" found in § 2560.503-1(m)(8), the Department of Labor ("DOL") explained that it "believes that this specification of the scope of the required disclosure of 'relevant' documents will serve the interests of both claimants and plans by providing clarity as to plans' disclosure obligations, while providing claimants with adequate access to the information necessary to determine whether to pursue further appeal."  Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000).  In *Midgett*, the Eighth Circuit reasoned that:

> the determination that claimants are entitled to "pre-decision access to relevant documents generated during the administrative appeal—would nullify the Department's explanation.  Access to documents during the course of an administrative decision would not aid claimants in determining 'whether to pursue further appeal,' because claimants would not yet know if they faced an adverse decision."

561 F.3d at 896 (8th Cir. 2009) (quoting *Metzger*, 476 F.3d at 1167); *see also Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) ("Documents produced before a

decision is made would not assist a claimant in deciding whether to pursue an appeal because the claimant would not yet know if there has been an adverse determination"). Thus, Ms. Crites was entitled to access the peer review only after Aetna made its "adverse benefit determination on review." 29 C.F.R. § 2560.503-1(i)(5).[3]

---

[3] The Court acknowledges the DOL's position that ERISA "claimants have a right to review and respond to new evidence or rationales developed by the plan during the pendency of the appeal and have the opportunity to fully and fairly present his or her case at the administrative appeal level, as opposed merely to having a right to review such information on request only after the claim has already been denied on appeal." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92324 (Dec. 19, 2016). In addition, the DOL filed an *amicus* brief in support of a petition for rehearing *en banc* by the Eighth Circuit in *Midgett*, invoking *Auer* deference to its own position that ERISA "claimants are deprived of a full and fair review when claimants are prevented from responding at the administrative level to evidence developed by the plan" during the course of an administrative appeal. Br. Sec'y Labor, Hilda L. Solis, *Amicus Curiae* Support Pl.-Appellant's Pet. Reh'g at 5, *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009) (No. 08-2523), 2009 WL 8186025, at *5; *see also Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 402 (D. Conn. 2019) (acknowledging the DOL's *amicus* brief in *Midgett* and its argument for *Auer* deference). The Eighth Circuit denied rehearing *en banc* without comment.

The Court further recognizes that the DOL recently amended the ERISA Claims Regulation to explicitly set forth the plan administrator's duty to disclose new evidence on appeal. *See* 29 C.F.R. § 2560.503-1(h)(4)(i) (2018). The amendment applies to claims for disability benefits filed under a plan after April 1, 2018. *See* 29 C.F.R. § 2560.503-1(p)(3). A "claim for benefits" is defined as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e). Ms. Crites filed her claim in 2015.

Neither party has raised the issue of whether the DOL's position is entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997), or *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945), notwithstanding the Eighth Circuit's decision in *Midgett*. *Auer* held that a federal agency's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" 519 U.S. at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). The Supreme Court recently declined to overturn *Auer* and *Seminole Rock*, but it narrowed the circumstances under which a court should defer to an agency's interpretation of its own regulation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019) (reasoning that "*Auer* deference is sometimes appropriate and sometimes not" and adopting a five-part test to determine whether *Auer* deference should be applied in a particular case).

Because the issue has not been raised or briefed by the parties, it would be imprudent for the Court to decide it at this time. However, the Court observes that Ms. Crites has not identified record evidence establishing that she was prevented from responding at the administrative level to evidence developed by Aetna during the course of her administrative appeal. As noted above, Dr. Farache documented five unsuccessful attempts to confer with Ms. Crites' treating physicians;

Ms. Crites' reliance on *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir. 1996), is inapposite. *Wilczynski* is not binding on this court, which lies in the Eighth Circuit. More to the point, *Wilczynski* addressed an older version of the ERISA Claims Regulation and is, therefore, of no help to Ms. Crites here.[4]

In sum, the Court finds that Aetna's denial of long-term disability benefits was based on substantial evidence that Ms. Crites is capable of performing at least sedentary work, as explained above. Therefore, the decision was not arbitrary or capricious, and the Court will not disturb Aetna's decision.

V. **Conclusion**

For the foregoing reasons, the Court finds that Aetna did not abuse its discretion in denying Mr. Crites' claim for long-term disability benefits under the Plan. Accordingly, the Court grants Aetna's motion for judgment on the administrative record and dismisses with prejudice Mr. Crites' claim (Dkt. No. 13).

It is so ordered this 21st day of May, 2020.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge

---

Aetna sent a copy of Dr. Farache's independent neurological review to Drs. Lewis and Schlesinger (A.R. 821, 836, 972–73). Aetna also notified James Lucas Graham, Ms. Crites' attorney at that time, that it had sent a copy of Dr. Farache's report to Drs. Lewis and Schlesinger "to obtain clarification regarding Ms. Crites' clinical status, but obtained no response." (A.R. 851). The record does not suggest that Ms. Crites or her counsel requested a copy of Dr. Farache's report. Further, Ms. Crites' assertion that she "was never told that a vocational expert had been retained and had reported that she could work at some sedentary jobs" is not supported by the record before the Court (Dkt. No. 16, at 4). Consequently, the Court cannot say, on the record before it, that Ms. Crites has been deprived of a full and fair opportunity to appeal Aetna's initial denial of benefits.

[4] Under the then-applicable ERISA Claims Regulation, Ms. Wilczynski was entitled to "review pertinent documents." *See Wilczynski*, 93 F.3d at 402 (quoting 29 C.F.R. § 2560.503-1(g) (1984)).